JOSEPH W. COTCHETT (SBN 36324)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

GARY A. PRAGLIN (SBN 101256)
gpraglin@cpmlegal.com
THERESA E. VITALE (SBN 333993)
tvitale@cpmlegal.com
CAILIN M. RUFF (SBN 358322)
cruff@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
2716 Ocean Park Boulevard, Suite 3088
Santa Monica, CA 90405
Telephone: (310) 392-2008
Facsimile: (310) 392-0111

*Attorneys for Plaintiff Carlos Espinoza*

**Electronically FILED by Superior Court of California, County of Los Angeles 8/03/2026 4:36 PM David W. Slayton, Executive Officer/Clerk of Court, By G. Delgado, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF LOS ANGELES**

**CARLOS ESPINOZA**, an individual,

Plaintiff,

v.

**LINEAGE LOGISTICS HOLDINGS, LLC**, a Maryland corporation; **LINEAGE LOGISTICS PFS, LLC**, a Delaware corporation; **BAY GROVE MANAGEMENT COMPANY, LLC d/b/a BAY GROVE**, a Delaware corporation; **CHILL BUILD LOS ANGELES I, LLC**, a Delaware corporation; **LOS PALOS STREET OPERATING, LLC**, a Delaware corporation; **PEARCE SERVICES, LLC**, a Delaware corporation; and DOES 1-50, inclusive,

Defendants.

**CASE NO.:** 26STCV24430

**COMPLAINT FOR DAMAGES:**

1. **NEGLIGENCE**
2. **NEGLIGENCE PER SE**
3. **STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITIES**
4. **PRIVATE NUISANCE**
5. **PUBLIC NUISANCE**
6. **TRESPASS**

**DEMAND FOR JURY TRIAL**

## TABLE OF CONTENTS


**Page**

**I. INTRODUCTION ... 1**

**II. JURISDICTION AND VENUE ... 2**

**III. PARTIES ... 2**

**IV. FACTUAL BACKGROUND ... 5**

- **A. The Facility and the Defendants' Respective Roles ... 5**
- **B. Anhydrous Ammonia ... 5**
- **C. Notice of Hazards and Fire Risks ... 6**
- **D. The Fire ... 7**
- **E. The Impact of Toxic Releases ... 8**

**V. CAUSES OF ACTION ... 9**

- **FIRST CAUSE OF ACTION ... 9**
  **NEGLIGENCE**
- **SECOND CAUSE OF ACTION ... 10**
  **NEGLIGENCE PER SE**
- **THIRD CAUSE OF ACTION ... 12**
  **STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITIES**
- **FOURTH CAUSE OF ACTION ... 13**
  **PRIVATE NUISANCE**
- **FIFTH CAUSE OF ACTION ... 14**
  **PUBLIC NUISANCE**
- **SIXTH CAUSE OF ACTION ... 15**
  **TRESPASS**

**VI. PRAYER FOR RELIEF ... 16**

**VII. JURY TRIAL DEMAND ... 17**

Plaintiff Carlos Espinoza ("Plaintiff"), an individual, brings this action against Defendants Lineage Logistics Holdings, LLC ("Defendant Lineage"), Lineage Logistics PFS, LLC ("Defendant Lineage PFS"), Bay Grove Management, LLC d/b/a Bay Grove, LLC ("Defendant Bay Grove"), Chill Build Los Angeles I, LLC ("Defendant Chill Build"), Los Palos Operating Services, LLC ("Defendant Los Palos"), Pearce Services, LLC ("Defendant Pearce Services"), and DOES 1 through 50, inclusive (collectively, "Defendants"). Plaintiff makes the following allegations based upon information and belief.

## I. INTRODUCTION

1. This case arises from a massive industrial fire that broke out on June 17, 2026 (the "Fire"), at a cold-storage warehouse located at 1400 South Los Palos Street in Boyle Heights, California (the "Facility"). The Fire burned for approximately a week, releasing toxic gases and particulate matter into the air in the Boyle Heights neighborhood and the greater Los Angeles area.

2. As a result of the Fire, and on that same date, approximately 70 people were evacuated by the Los Angeles Police Department across two nearby streets and the Los Angeles Fire Department ("LAFD") issued shelter-in-place orders for more than 4,000 individuals in the areas surrounding the Facility.

3. On information and belief, the Fire released a mixture of hazardous substances into a densely populated urban community, including ammonia from the Facility's industrial refrigeration system, hydrogen fluoride generated by burning lithium-ion batteries (detected by the LAFD), and additional toxic combustion byproducts from the Facility's dense polyurethane foam insulation. Fine particulate matter ("PM2.5") reached "Very Unhealthy" air-quality index levels, meaning the U.S. Air Quality Index values were between 201 to 300, which are considered a high alert risk to people's health, across wide portions of Los Angeles County and neighboring communities.

4. The City of Los Angeles and the State of California each declared a state of emergency. Additionally, the South Coast Air Quality Management District ("SCAQMD") issued particle-pollution advisories, which were extended repeatedly as the Fire continued to burn, covering central Los Angeles County, the San Gabriel Valley, the East San Fernando Valley, and Northwest San Bernardino Valley.

5. Since the Fire, approximately eighty-eight million (88,000,000) pounds of previously frozen food has been rotting inside the Facility, causing a pervasive and repellent odor to permeate the air in the community, including inside Plaintiff's home.

6. Temperatures above 90 degrees in Los Angeles County caused the smell to increase and accelerated the breeding of disease carrying flies attracted to the waste. In the weeks following the Fire, rodents and other animals were attracted to the area by the rotting food waste.

7. As of July 26, 2026, only half the food waste had been removed from the Facility, leaving the community with the garbage-like odor for over a month.

8. Plaintiff now brings this action to hold Defendants accountable for, among other things, their failure to exercise due care in operating the Facility, leading to the Fire and the release of toxic substances, harming Plaintiff.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction of this action pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other trial courts," and California Code of Civil Procedure section 410.10. Venue is proper in this County because Defendants are located and/or perform business in this County, and/or a substantial part of the events, acts, omissions, and transactions complained of herein occurred in this County.

10. This Court has personal jurisdiction over the Defendants because they have transacted business and engaged in conduct, by affirmative act or omission, in the State of California, such that they reasonably anticipated being subject to personal jurisdiction before the courts of this State.

11. The amount in controversy of this action exceeds the jurisdictional minimum of this Court.

## III. PARTIES

12. Plaintiff Carlos Espinoza is an individual who resides at 3104 Blanchard Street, Los Angeles, California, in the Boyle Heights neighborhood and under three miles of the Facility. Because of the Fire and the pervasive, garbage-like odor left in the Fire's wake, Mr. Espinoza was required to

shelter in place and suffered adverse health effects, and Mr. Espinoza suffered and continues to suffer loss of use and enjoyment of his home and other damages described herein.

13. Defendant Lineage is a Delaware limited liability company with a principal place of business at 46500 Humboldt Drive, Novi, Michigan 48377. Defendant Lineage is in good standing with the California Secretary of State. Its agent of service is located at 2710 Gateway Oaks Drive, Sacramento, California. Defendant Lineage is the "main operating entity" for Lineage, Inc., a Maryland corporation and real estate investment trust ("Lineage REIT"), and Lineage OP, LP, a Maryland limited partnership that is also the operating partnership of Lineage REIT ("Lineage OP"). Defendant Lineage occupies the Facility as tenant-operator under a lease with Defendant Chill Build and subleases the rooftop to Defendant Los Palos. Defendant Lineage runs a cold-storage and blast-freezing business at the Facility.

14. Defendant Lineage PFS is a Delaware limited liability company with a principal place of business at 46500 Humboldt Drive, Novi, Michigan 48377. Defendant Lineage PFS is in good standing with the California Secretary of State. Its agent of service is located at 2710 Gateway Oaks Drive, Sacramento, California. On information and belief, Defendant Lineage Logistics PFS is involved in the ownership, operation, and maintenance of the cold-storage and blast-freezing business at the Facility.

15. Defendant Bay Grove is a Delaware corporation with its corporate headquarters located in California at 801 Montgomery Street, Fifth Floor, San Francisco, California. On information and belief, Bay Grove Management Company, LLC's sole managing member is Bay Grove Capital Group LLC. On information and belief, Defendant Bay Grove founded, owned, and operated Defendant Lineage between 2007 and 2024, and still provides services to Defendant Lineage through the present.

16. Plaintiff is informed and believes and, based on such information and belief, alleges that Defendant Lineage, Defendant Lineage PFS, and Defendant Bay Grove, inclusive, and each of them, are and at all material times have been, the owners, agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein. Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as owner, employee, agent, co-conspirator or member of a joint

venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for any and/or all claims set forth herein, except as otherwise alleged.

17. Defendant Chill Build owns the real property and building located at 1400 South Los Palos Street, Los Angeles, California 90023. On information and belief, Defendant Chill Build is organized under the laws of Delaware and maintains a principal place of business at 6831 East 32nd Street, Suite 300, Indianapolis, Indiana. Defendant Chill Build is in good standing with the California Secretary of State. Its agent of service is located at 1325 J Street, Suite 1550, Sacramento, California.

18. Defendant Los Palos is a wholly-owned subsidiary of Altus Power, Inc. (NYSE: AMPS), a Delaware corporation with a principal place of business at 2200 Atlantic Street, Sixth Floor, Stamford, Connecticut 06902. Defendant Los Palos is in good standing with the California Secretary of State. Its agent of service is located at 555 Capitol Mall, Suite 1150, Sacramento, California. Defendant Los Palos owns and operates the rooftop solar array (the "Facility Solar Array") installed on the Facility and engaged Defendant Pearce Services to test that array on or about June 17, 2026.

19. Defendant Pearce Services is headquartered at 1222 Vine Street, Paso Robles, California. Defendant Pearce Services was acquired by CBRE Group, Inc. (NYSE: CBRE) in November 2025 for approximately $1.2 billion. On information and belief, Defendant Pearce Services is organized under the laws of Delaware and, notwithstanding the CBRE acquisition, continues to maintain offices in Paso Robles, California. Defendant Pearce Services is in good standing with the California Secretary of State. Its agent of service is located at 330 North Brand Boulevard, Glendale, California. Defendant Pearce Services provides design, engineering, maintenance, and repair services for renewable energy generation and storage systems, including rooftop solar arrays, and was engaged by Los Palos to test the rooftop solar array at the Facility on June 17, 2026, testing believed to have ignited the Fire.

20. At all times relevant herein, each Defendant was the agent, employee, partner, joint venturer, co-conspirator, alter ego, and/or co-participant of each other Defendant, and in doing the things herein alleged, was acting within the course and scope of that agency, employment, partnership, joint venture, conspiracy, or participation, with the advance knowledge, acquiescence, or ratification of each other Defendant.

21. Does 1 through 50 are sued under fictitious names. Their true names and capacities are unknown to Plaintiffs. Does may include: (a) subcontractors or field technicians who conducted the solar array testing on June 17, 2026; (b) manufacturers, distributors, or installers of the solar panels, lithium-ion battery systems, or refrigeration equipment; (c) any other contractor present on the roof of the Facility that day; and (d) predecessor or affiliate entities with responsibility for the Facility or the solar array. Plaintiffs will amend this Complaint to allege the true names and capacities of the Doe defendants when ascertained.

## IV. FACTUAL BACKGROUND

### A. The Facility and the Defendants' Respective Roles

22. The Facility is an approximately 500,000-square-foot cold-storage and blast-freezing warehouse for foods such as meats, seafood, or prepared meals. The Facility is in a densely populated residential and commercial corridor of Boyle Heights, immediately adjacent to multi-family residential housing and light commercial uses. At the time of the Fire, it held approximately 88 million pounds of frozen food and was equipped with an industrial ammonia-based refrigeration system and lithium-ion battery-powered equipment.

23. At all relevant times, Defendants Lineage, Lineage PFS, Bay Grove, and Chill Build owned, operated, controlled and/or maintained the Facility.

24. At all relevant times, Defendants Los Palos and Pearce owned, operated, controlled, and/or maintained the Facility Solar Array.

### B. Anhydrous Ammonia

25. Defendants Lineage, Lineage PFS, Bay Grove, and Chill Build used anhydrous ammonia as the primary industrial refrigerant for the cold-storage system.

26. Anhydrous ammonia is a regulated toxic and flammable substance under the Clean Air Act. (40 C.F.R. § 68.130; 42 C.F.R. § 7412.) Because of this designation, anhydrous ammonia is also a toxic substance regulated under California Health and Safety Code sections 25531 et seq. (California Accidental Release Prevention Program, "CalARP"). An anhydrous ammonia system of the scale operated at the Facility constitutes a "program 3" regulated process under CalARP.[1] Lineage was

[1] CalEPA, *California Accidental Release Prevention Program: Program Levels*, https://calepa.ca.gov/california-accidental-release-prevention/california-accidental-release-prevention-program-levels/ (last visited July 28, 2026).

required to prepare, implement, distribute, and maintain a Risk Management Plan ("RMP") under Health and Safety Code section 25533 et seq and California Code of Regulations section 5050.1 et seq.

27. Anhydrous ammonia is corrosive to the skin, eyes, and lungs. At high concentrations, anhydrous ammonia can be fatal.[2]

**C. Notice of Hazards and Fire Risks**

28. Defendants were on notice regarding the safety issues posed by their activities. Since as early as 1987, the EPA has published numerous chemical safety alerts warning operators of cold-storage and refrigeration systems of the dangers posed by anhydrous ammonia to workers and the public.[3]

29. A prior fire occurred at Defendants Lineage, Lineage PFS, and Bay Grove's cold-storage facility in Finley, Washington, in 2024.[4] That fire burned for nearly two months, polluting the surrounding neighborhood with smoke, ash, and other toxic chemicals. In particular, it was estimated that the fire destroyed nearly 14,000 pounds of ammonia, which Defendants Lineage, Lineage PFS, and Bay Grove use in the Facility as well.[5] The fire's devastation to the community put Defendants Lineage, Lineage PFS, and Bay Grove on notice that a fire at their cold-storage facilities can escalate and cause devastation to the surrounding area. What is more, that a fire that massive can cause thousands of pounds of hazardous ammonia to be released.

30. Additionally, Defendants Lineage, Lineage PFS, Bay Grove, and Chill Build knew the risk anhydrous ammonia posed. Specifically, Defendant Lineage has previously been accused of failing to comply with federal safety regulations to prevent the accidental release of anhydrous ammonia. In 2023, Defendant Lineage agreed to pay a fine to the Environmental Protection Agency

---

[2] *See e.g.*, John Nowatzki, *Anhydrous Ammonia: Managing the Risks* (September 2021), North Dakota State University, https://www.ndsu.edu/agriculture/sites/default/files/2021-11/ae1149.pdf.

[3] *See, e.g.*, EPA, *Prevention Reference Manual: Chemical Specific, Vol. 11, Control of Accidental Releases of Ammonia* (Aug. 1987), https://nepis.epa.gov/Exe/ZyPDF.cgi/2000AZT5.PDF?Dockey=2000AZT5.PDF; Office of Solid Waste and Emergency Management, EPA, *Hazards of Ammonia Releases at Ammonia Refrigeration Facilities (Update)* (EPA 550-F-01-009) (Aug. 2001), https://nepis.epa.gov/Exe/ZyPDF.cgi/P1002QOU.PDF?Dockey=P1002QOU.PDF.

[4] *See e.g.*, Courtney Flatt, *Finley Warehouse Has Burned For 7 Weeks, Benton County Commissioners Tell Owners to Fix It Faster* (Updated June 16, 2024), https://www.nwpb.org/nw-news/2024-06-07/finley-warehouse-has-burned-for-7-weeks-benton-county-commissioners-tell-owners-to-fix-it-faster; Tri-City Herald Staff, *Update: Burning Tri-Cities Cold Storage Center Partially Collapses. Evacuations Lifted*, Tri-City Herald (April 22, 2024), https://www.tri-cityherald.com/news/local/article287887405.html.

[5] Wendy Culverwell, *Ammonia was Used to Chill huge Finley Cold Storage Warehouse. Where Did it Go in the Fire?*, Tri-City Herald (April 30, 2024), https://www.tri-cityherald.com/news/business/article287941945.html; Annette Cary, *Feds Called in to Help Investigate Cause of Largest Building Fire in Tri-Cities History*, Tri-City Herald (May 2, 2024), https://www.tri-cityherald.com/news/local/article288195220.html.

over how another of its facilities in Iowa managed the risk of the 10,000 pounds of anhydrous ammonia stored on site.[6]

**D. <u>The Fire</u>**

31. On June 17, 2026, at approximately 2:30 p.m., the Fire broke out on the roof of the Facility during solar array testing conducted by Defendant Pearce Services and/or its subcontractors. The Fire rapidly escalated into a massive industrial blaze that burned for approximately a week.




[7]

32. More than 130 LAFD firefighters responded to the Fire, which LAFD representatives described as very complex and posing numerous safety hazards. The Facility's construction—corrugated steel exterior walls filled with dense polyurethane foam insulation—made the Fire extraordinarily difficult to extinguish. LAFD Fire Chief Jaime Moore described the structure as "like a giant cooler." Firefighting efforts required LAFD to source high-powered water cannons, deploy helicopters for repeated water drops, and use heavy equipment to breach sections of the building's walls for access.

---

[6] *See e.g.*, Clara Harter, *Crews Gain Control of Boyle Heights Warehouse Fire; 'Highly Toxic' Ammonia Leak Spurs Concern*, L.A. Times (June 17, 2026), https://www.latimes.com/california/story/2026-06-17/massive-boyle-heights-warehouse-fire-prompts-shelter-in-place-orders.

[7] Photo of the Facility by KTLA, available at: https://ktla.com/news/local-news/fire-at-storage-facility-in-boyle-heights/.

33. Fire Chief Moore also reported that during the firefighting efforts, there was a "large powerful stream of ammonia" that was likely caused by the Fire compromising an ammonia line.[8]

34. The Facility's refrigeration system failure caused the decomposition of stored food products, generating additional ammonia, methane, and biological hazards that continued to affect air quality in the surrounding area.

35. Defendant Lineage PFS has received twenty-one (21) Notices of Violations ("NOV") for public nuisance from SCAQMD, one per day from July 13, 2026, to August 2, 2026. The NOVs were for violations of SCAQMD Rule 402 and California Health & Safety Code § 41700.

**E. The Impact of Toxic Releases**

36. Local authorities issued a shelter-in-place order for the community immediately surrounding the Facility that lasted three days. SCAQMD separately issued a particle pollution advisory covering central Los Angeles County, the San Gabriel Valley, the East San Fernando Valley, and Northwest San Bernardino Valley. The advisory was extended multiple times as the Fire continued to burn and SCAQMD sensors recorded "Very Unhealthy" PM2.5 concentrations throughout Boyle Heights on multiple days. Over the span of approximately a week, SCAQMD received approximately nine hundred (900) odor complaints related to the Fire.[9]

37. Plaintiff's property, which is a few miles from the Facility, was physically contaminated by soot, ash, and combustion byproducts from the Fire. Among the personal property contaminated was Plaintiff's couch, drapes, and car.

38. Prior to the Fire, Mr. Espinoza had never experienced asthma or any other respiratory issues as an adult. As a result of the Fire, Plaintiff developed symptoms including the inability to swallow or taste, body aches, and headaches, for which he sought medical treatment. Mr. Espinoza was diagnosed with acute bronchitis and asthma with acute exacerbation and received treatment. As a result of these symptoms, Mr. Espinoza missed work.

---

[8] Julie Sharp, *Boyle Heights Shelter-In-Place Order Reinstated as Crews Ventilate Hazardous Smoke Warehouse*, CBS News (June 19, 2026), https://www.cbsnews.com/losangeles/news/boyle-heights-commercial-building-fire-los-angeles-fire-department-los-palos-street/?intcid=CNM-00-10abd1h.

[9] City News Service, *Almost 1,000 Resident Air Complaints Filed with Regulators over Lineage Stench in Boyle Heights*, CBS News (July 21, 2026), https://www.nbclosangeles.com/news/local/almost-1000-resident-air-complaints-filed-with-regulators-over-lineage-stench-in-boyle-heights/3919853/.

39. Once the Fire was put out, the nightmare did not end. The millions of pounds of previously frozen food were left rotting inside the burnt Facility for nearly a month, resulting in an unbearable, garbage-like odor that has permeated the community and Plaintiff's home.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### NEGLIGENCE

**(By Plaintiff Against all Defendants)**

40. Plaintiff incorporates and re-alleges the paragraphs above as though fully set forth herein.

41. At all relevant times, Defendants owed a duty of ordinary care to Plaintiff in the ownership, operation, management, supervision, inspection, maintenance, repair, and/or control of the Facility, so as not to create an unreasonable risk of harm. California Civil Code section 1714 imposes a general duty of care upon all persons to avoid injuring others through negligent acts or omissions. (*Kesner v. Superior Court* (2016) 1 Cal. 5th 1132, 1159 (landowner's duty of care extends to persons injured off the premises by conditions on or activities conducted on the premises).)

42. On information and belief, Defendants Lineage, Lineage PFS, and Bay Grove breached their duty of care by: (a) failing to maintain the anhydrous ammonia refrigeration system in a safe condition; (b) failing to implement adequate fire suppression systems at the Solar Array interface with the refrigeration system; (c) failing to update its CalARP Risk Management Plan following the 2024 fire as required by Health and Safety Code section 25534 and California Code of Regulations, title 19, section 2745.10.5; (d) failing to eliminate or adequately mitigate the specific ignition risk identified by the 2024 fire; and (e) failing to implement emergency protocols that would have isolated the ammonia system from the rooftop fire hazard.

43. On information and belief, Defendant Chill Build breached its duty of care as building owner by: (a) failing to inspect for and remediate the dangerous condition created by the combination of the Solar Array and the ammonia refrigeration system; (b) failing to require its tenant Lineage to update the RMP and implement corrective action following the 2024 fire; and (c) failing to exercise its non-delegable duty of care as a property owner to prevent unreasonable off-site harm.

44. On information and belief, Defendant Los Palos breached their duty of care by: (a) failing to implement a rapid shutdown system on the Facility Solar Array adequate to de-energize the array during a fire emergency; (b) failing to coordinate with Lineage and LAFD regarding the Facility Solar Array's known islanding risk in proximity to the ammonia system; (c) continuing to authorize and supervise energized testing of the Facility Solar Array without implementing safeguards commensurate with the identified ignition risk.

45. On information and belief, Defendant Pearce Services breached its duty of care by performing energized testing of the Facility Solar Array without implementing adequate fire safety protocols appropriate to the Facility Solar Array's proximity to an industrial anhydrous ammonia system.

46. As a direct and proximate result of Defendants' breach of their duties, Plaintiff was harmed. Defendants' breach of their duties was the direct and proximate cause of the Fire at the Facility that caused the release of hazardous substances, odors, and wastes, and interfered with Plaintiff's property rights and health.

**SECOND CAUSE OF ACTION**

**NEGLIGENCE PER SE**

**(By Plaintiff Against all Defendants)**

47. Plaintiff incorporates and re-alleges the paragraphs above as though fully set forth herein.

48. California Evidence Code section 669 establishes a presumption of negligence where: (a) the party violated a statute, ordinance, or regulation; (b) the violation proximately caused injury to person or property; (c) the injury resulted from an occurrence the statute, ordinance, or regulation was designed to prevent; and (d) the injured person was among the class of persons the statute, ordinance, or regulation was designed to protect. (*Ramirez v. Nelson* (2008) 44 Cal.4th 908, 918.)

49. On information and belief, Defendants violated statutes and regulations enacted to protect persons such as Plaintiff, including, without limitation:

(a) The California Fire Code, governing fire prevention and the safe performance of work creating a risk of fire;

(b) The Emission Limitations and Nuisance rule, Health & Safety Code §41700 and SCAQMD Rule 402, prohibiting a person from discharging quantities of air contaminants or other material that cause injury, detriment, nuisance, or annoyance to any considerable number of persons or to the public that endanger the comfort, health or safety of those persons.

(c) The California Accidental Release Prevention Program, Health & Safety Code §§ 25531–25543.3 and its implementing regulations at Title 19 of the California Code of Regulations, requiring facilities that handle regulated substances such as anhydrous ammonia above threshold quantities to prepare and implement risk-management and accidental-release-prevention programs;

(d) The Hazardous Materials Business Plan requirements, Health & Safety Code §§ 25500–25520, requiring handlers of hazardous materials above threshold quantities to prepare, submit, and implement a business plan addressing emergency response, training, and reporting of releases; and

(e) The Cal/OSHA General Duty Clause and General Industry Safety Orders, Labor Code § 6400 and Title 8 of the California Code of Regulations §§ 3200 et seq., requiring employers to furnish a safe place of employment and to maintain equipment in safe operating condition.

50. Each of the foregoing statutes and regulations was enacted to protect persons such as Plaintiff, a resident in proximity to a facility storing hazardous and combustible materials and at which work creating a risk of fire is performed, from the precise type of harm that occurred here: an industrial fire and the resulting release of toxic smoke, ammonia, and hydrogen fluoride. The 2024 prior fire at the warehouse in Finley, Washington gave Defendants Lineage, Lineage PFS, and Bay Grove actual notice of the specific hazard that these statutes and regulations were designed to prevent.

51. Health & Safety Code §41700 and SCAQMD Rule 402 were enacted to protect persons such as Plaintiff, a resident in proximity to a cold-storage facility holding nearly 88 million pounds of perishable food items that will rot if left out in the heat, from the precise type of harm that occurred here: a shutdown of the refrigeration system which left the frozen food out to bake under the hot

summer sun for weeks, releasing a foul rotting odor and attracting large flies and rodents to the surrounding area.

52. Defendants' violations of the foregoing statutes and regulations were a direct, legal, and proximate cause of the Fire and the resulting injuries and damages to Plaintiff, and Defendants' conduct therefore constitutes negligence as a matter of law pursuant to Evidence Code section 669.

## THIRD CAUSE OF ACTION

## STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITIES

**(By Plaintiff Against Defendants Lineage, Lineage PFS, Bay Grove, and Chill Build)**

53. Plaintiff incorporates and re-alleges the paragraphs above as though fully set forth herein.

54. California recognizes strict liability without fault for injuries and property damage proximately caused by ultrahazardous activities. (*Luthringer v. Moore* (1948) 31 Cal.2d 489, 498.) Whether an activity is ultrahazardous is determined by the factors outlined in Restatement (Second) of Torts sections 519 and 520, as adopted in California. Whether an activity is ultra-hazardous is a question of law for the court.

55. Defendants Lineage, Lineage PFS, and Bay Grove's operation of a large-scale industrial anhydrous ammonia refrigeration system in the densely populated residential community of Boyle Heights satisfies the Restatement section 520 factors. It constitutes an ultrahazardous activity as a matter of law:

(a) **High degree of risk of harm to others.** Industrial-scale anhydrous ammonia in quantities above the CalARP threshold, stored under pressure in a system that cannot be rapidly de-energized in an emergency, presents an extreme risk of catastrophic release that can cause mass property contamination and community-wide toxic exposure, as the June 17, 2026 Fire demonstrates.

(b) **Likelihood that harm will be great.** A large-scale ammonia release in a densely populated urban neighborhood causes widespread property contamination, requires community-wide shelter-in-place orders, and necessitates state emergency declarations, as the Fire confirms.

(c) **Inability to eliminate risk through reasonable care.** Even with reasonable care, the combination of high-pressure toxic refrigerant, an energized rooftop solar array with known islanding characteristics, and lithium-ion battery storage in an urban setting cannot eliminate the risk of catastrophic release from fire, seismic event, or equipment failure.

(d) **Not a matter of common usage.** Large-scale industrial anhydrous ammonia cold storage in a densely populated residential neighborhood is not a common practice.

(e) **Inappropriateness to the location.** The Facility is located immediately adjacent to residential housing and within a densely populated urban neighborhood where a catastrophic ammonia release presents a foreseeable risk of mass community harm.

(f) **Community value outweighed by danger.** The commercial value of cold storage does not outweigh the extreme and foreseeable risk of toxic contamination to surrounding neighborhood.

56. On information and belief, Defendant Chill Build knew its tenants operated an industrial refrigeration system in the densely populated residential community.

57. Defendants Lineage, Lineage PFS, Bay Grove, and Chill Build are strictly liable for all harm to Plaintiff proximately caused by the storage and use of anhydrous ammonia at the Facility, regardless of the presence or absence of negligence. As a direct and proximate result, Plaintiff suffered damages in amounts to be proven at trial.

**<u>FOURTH CAUSE OF ACTION</u>**

**<u>PRIVATE NUISANCE</u>**

**(By Plaintiff Against all Defendants)**

58. Plaintiff incorporates and re-alleges the paragraphs above as though fully set forth herein.

59. Civil Code section 3481 provides that every nuisance not included in the definition of public nuisance is a private nuisance. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 937-38 (elements of private nuisance: (1) interference with plaintiff's use and enjoyment

of land; (2) that invasion is substantial; and (3) the interference is unreasonable).) The Fire constituted both a public nuisance and a private nuisance to Plaintiff by invading his specific property rights.

60. Defendants' acts and omissions resulted in the physical invasion of Plaintiff's interests in the private use and enjoyment of their respective properties, specifically through the deposition of soot, ash, anhydrous ammonia residue, particulate matter, and toxic combustion byproducts directly onto their real and personal property.

61. The invasion was substantial and unreasonable. It was substantial in that it caused actual physical contamination of property requiring professional remediation. It was unreasonable in that Defendants Lineage, Lineage PFS, and Bay Grove had actual notice of the dangerous condition from the 2024 fire and continued to operate and authorize activities at the Facility without eliminating or adequately mitigating that risk.

62. The continuing presence of residual contamination and the ongoing decomposition of stored food products at the Facility constitute a continuing private nuisance entitling Plaintiff to continuing relief.

63. As a direct and proximate result of the private nuisance, Plaintiff suffered property contamination, cleanup costs, loss of use, economic loss, and other damages in amounts to be proven at trial.

**FIFTH CAUSE OF ACTION**

**PUBLIC NUISANCE**

**(By Plaintiff Against all Defendants)**

64. Plaintiff incorporates and re-alleges the paragraphs above as though fully set forth herein.

65. Defendants created, caused, and/or permitted a condition to exist consisting of the release, threatened release, storage, handling, and/or instability of hazardous chemicals and substances that was: injurious to health; offensive to the senses; and/or an obstruction to the free use of property.

66. The hazardous conditions created by Defendants resulted in widespread emergency response measures, including unprecedented helicopter water-drops, shelter-in-place orders, road closures, emergency perimeters, hazardous materials response operations, public safety warnings, and

substantial disruption to residential neighborhoods and surrounding communities in Boyle Heights and East Los Angeles.

67. Defendants' conduct created a substantial and continuing risk of fire, explosion, toxic vapor migration, environmental contamination, airborne chemical exposure, and catastrophic harm affecting tens of thousands of residents, businesses, schools, roadways, public infrastructure, and properties located near the Site.

68. The seriousness of the harm to the public outweighs any social utility of Defendants' conduct.

69. Plaintiff has suffered harm that is different in kind, and not merely in degree, from that suffered by the general public, including but not limited to: interference with Plaintiff's specific property; individualized loss of use and enjoyment of his property; and particularized economic damages.

70. Defendants' conduct was a substantial factor in causing Plaintiff's injuries.

71. The interference caused by Defendants was substantial, unreasonable, offensive, and harmful to the public, and would be highly offensive to an ordinary reasonable person.

**SIXTH CAUSE OF ACTION**

**TRESPASS**

**(By Plaintiff Against all Defendants)**

72. Plaintiff incorporates and re-alleges the paragraphs above as though fully set forth herein.

73. Plaintiff has a right to exclusive possession and use of his respective real and personal property.

74. As a direct and proximate result of the Fire, Defendants caused soot, ash, anhydrous ammonia residue, hydrogen fluoride residue, and toxic combustion byproducts, physical substances, to enter upon and physically contaminate Plaintiff's real and personal property without authorization. This physical entry of tangible substances constitutes trespass. (*Elton v. Anheuser-Busch Beverage Group, Inc.* (1996) 50 Cal.App.4th 1301, 1306 (particulate matter, lint, cement dust, and fire-derived deposits deposited on neighboring property constitute trespass; fire negligently allowed to escape onto

adjoining property constitutes trespass); *San Diego Gas & Electric Co. v. Superior Ct.* (1996) 13 Cal.4th 893, 936-37 (distinguishing trespass, which requires actual physical, tangible invasion, from nuisance; soot, ash, and particulate deposition constitutes physical invasion supporting trespass); *Wilson v. Interlake Steel Co.* (1982) 32 Cal.3d 229, 233-234 (trespass by deposit of particulate matter is actionable where the invasion is damaging and results from intentional, negligent, or reckless conduct).) The chemical composition of the deposited residue, including any ammonia-related or battery-combustion constituents, will be established through sampling, official monitoring data, and expert analysis.

75. The trespass was caused by Defendants' intentional, negligent, and reckless acts and omissions in igniting and failing to contain the Fire. The entry of physical substances onto Plaintiff's property was the direct, foreseeable, and proximate consequence of Defendant's conduct.

76. As a direct and proximate result of the trespass, Plaintiff suffered loss of use, economic loss, and other damages in amounts to be proven at trial.

## VI. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests relief against Defendants as follows:

1. A judgment in favor of Plaintiff on all claims;
2. For compensatory and general damages according to proof;
3. An award to Plaintiff for the amount of damages, including personal injuries and property damage, according to proof;
4. Loss of the use and benefit of Plaintiff's real and/or personal property;
5. Past and future medical expenses and incidental expenses according to proof;
6. Loss of wages and/or any related displacement expenses, according to proof;
7. All costs of suit, including attorneys' fees where appropriate;
8. For reasonable attorneys' fees pursuant to California Code of Civil Procedure, section 1021.5;
9. For pre- and post-judgment interest at the legal rate on all amounts awarded; and
10. For all other relief as this Court may deem just and proper.

## VII. JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: August 3, 2026

**COTCHETT, PITRE & McCARTHY, LLP**

By: ___________________________
JOSEPH W. COTCHETT
GARY A. PRAGLIN
THERESA E. VITALE
CAILIN M. RUFF
*Attorneys for Plaintiff*